FILED
2007 Feb-13  AM 08:52
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:  EDWARD KIRKSEY WOOD and          )
        JO ANNE CARLE WOOD,             )          Bankruptcy No. 02-02514-TOM-7
                                        )          AP No. 02-00168
              Debtors,                   )

EDWARD KIRKSEY WOOD, JR.,                )
                                        )
              Appellant,                 )
                                        )
        v.                              )          CIVIL ACTION NO. 03-G-2830-S
                                        )
E. TED TAYLOR,                          )
                                        )
              Appellee.                  )

## MEMORANDUM OPINION

This cause is before the court on appeal from an order entered by the

Bankruptcy Court for the Northern District of Alabama in an adversary proceed in the

chapter 7 bankruptcy case of Edward Kirksey Wood, Jr. and Jo Ann Carle Wood.  The

court has jurisdiction pursuant to 28 U.S.C. § 158.

## STANDARD OF REVIEW

"In reviewing a bankruptcy court judgment as an appellate court, the

district court reviews the bankruptcy court's legal conclusions de novo.  The district court

must accept the bankruptcy court's factual findings unless they are clearly erroneous, and

give due regard to the bankruptcy court's opportunity to judge the credibility of the

witnesses." In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).

## SUMMARY OF RELEVANT FACTS

Appellant, E. Ted Taylor, ("plaintiff") filed an adversary proceeding complaint in the debtor's bankruptcy action alleging that certain debts due him from Edward Kirksey Wood, Jr. ("debtor") were not dischargeable pursuant to 11 U.S.C. § 523(a). Plaintiff's complaint asserted three counts. The only count at issue in the present appeal is Count I, which alleges the debtor's indebtedness to plaintiff was due to be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)[1] because "Wood obtained ... credit by false pretenses, false representation, and/or actual fraud." (R 5, p. 4) In particular, the debtor takes issue with the bankruptcy court's finding that a portion of his debt was not dischargeable because he engaged in false pretenses in connection with the plaintiff's execution of a loan guaranty.[2]

The loan in question was made to College Sports Partnership ("CPS"), a sports marketing business. At the time the loan was made, both the plaintiff and debtor

---

[1]  11 U.S.C. § 523 provides in part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

* * * *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition [.]

[2]  Plaintiff also asserted a claim of nondischargability under 11 U.S.C. § 523(a)(2)(A) in connection with the transfer of funds between CSP and a related company RSN. The bankruptcy court decided that issue in the debtor's favor and it is not an issue on this appeal.

were limited partners of CPS, and the debtor's company, Woodcom, Inc., served as

general partner.  The loan was from Regions Bank in the amount of $1.3 million.  In

connection with the loan, plaintiff signed a guaranty limited to $2,050,000.  This guaranty

was dated August 15, 2000, but was apparently signed and notarized on August 31, 2000.[3]

(R 18).  The debtor signed an unlimited guaranty dated August 15, 2000.  The debtor also

signed an unlimited guaranty as president of Woodcom, Inc.  Another limited partner of

CPS, Lloyd Wood, signed a guaranty limited to $325,000.[4]  The basis of plaintiff's claim

is that the debtor failed to inform him that Lloyd Wood's guaranty would be limited.  The

bankruptcy court ultimately found that the debtor engaged in false pretenses in connection

with the loan from Regions Bank:

> This court finds that the Plaintiff signed his guaranty with a mistaken
> understanding of the circumstances surrounding the transaction, and the
> Debtor should have known about and corrected the mistaken understanding.
> This Court concludes that the Debtor engaged in false pretenses by not
> making this discovery and disclosure before the loan was consummated.

(R. 11, p. 15).

## DISCUSSION

The key issue on this appeal is whether the bankruptcy court properly

applied 11 U.S.C. § 523(a)(2)(A).  That section excludes from discharge debts obtained

through fraud.  In In re Bilzerian, the court recognized that "[c]ourts have generally

---

[3]  Plaintiff signed an unlimited guaranty dated August 15, 2000.  (R 17).  This guaranty was to be in effect only until September 1, 2000, and is not at issue on this appeal.

[4]  Lloyd Wood was also the debtor's uncle.

interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud."  153

F.3d 1278, 1281 (11th Cir. 1998).  This means that in order to prevail on his claim of

nondischargeability under 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove by a

preponderance of the evidence, five elements:  (1) The debtor made a representation; (2)

it was knowingly false; (3) it was made with the intent to deceive the plaintiff; (4) the

plaintiff actually and justifiably relied on it; and (5) the plaintiff sustained a loss as a

proximate result of its reliance.  In re Johannessen, 76 F.3d 347, 350 (11th Cir.

1996)(listing elements); In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001)(same); Grogan v.

Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)(holding that

preponderance of the evidence is the standard of proof).  The bankruptcy court drew a

distinction between "false pretenses," "false representations," and "actual fraud," and

proceeded to consider them separately.[5]  (R. 11, p. 14).

The bankruptcy court first considered whether the debtor had made a false

representation.  Its opinion contains the following conclusions and findings on that issue:

> The Plaintiff testified at trial that the Debtor represented to him that Lloyd
> Wood would sign an unlimited guaranty.  The Debtor testified he did not
> realize until some point after the Regions Bank loan was completed that
> Lloyd Wood signed a limited guaranty.  Although the Court is not entirely
> convinced by the Debtor's testimony, it appears that at the time the Debtor
> told the Plaintiff that Lloyd Wood would sign an unlimited guaranty the
> Debtor believed the statement to be true.  Thus, the Court finds that the

---

[5]  It is not clear that § 523(a)(2)(A) is intended to set up three independent grounds for
nondischargeability under § 523(a)(2)(A).  See In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001)(raising the
issue, but finding it unnecessary to decide whether Field v. Mans, 116 S. Ct. 437 (1995) did away with
such distinctions).

>    Plaintiff did not meet his burden of proving the Debtor made an express
>    misrepresentation that Lloyd Wood would sign an unlimited guaranty.

(R. 11, pp. 14-15)(footnote omitted).  Therefore, the bankruptcy court found that the

plaintiff had not proved that at the time the debtor told the plaintiff Lloyd Wood would

sign a limited guaranty, the debtor knew that the statement was false.[6]  Based upon this

finding, the court found there to be no false representation.  At this point the bankruptcy

court made no finding as to when the debtor became aware Lloyd Wood would not sign

an unlimited guaranty.[7]

    The bankruptcy court next considered whether the debtor had engaged in

actual fraud.  After a brief discussion of the elements of actual fraud, the court found as

follows:  "As explained above [in the court's discussion of false representation], the

Plaintiff has not convinced the Court that the Debtor made any false representations to

him;  without a false representation, there cannot be actual fraud."  (R 11, p. 15).  In other

words, the court found the debtor could not have intended to deceive the plaintiff when he

---

[6] Although the bankruptcy court asserts in its opinion that "[t]he plaintiff testified at trial that the Debtor represented to him that Lloyd Wood would sign an unlimited guaranty" (emphasis added), the court cannot locate such testimony in the transcript.  In his brief to this court, plaintiff makes a similar assertion without citation to the transcript:  "The Debtor represented to Plaintiff that all of the personal guaranties were to be unlimited."  (emphasis added).  Appellee's Br. at 9.  The plaintiff's testimony concerning the alleged representation is discussed below.  He does not directly testify that the debtor told him Lloyd Wood would sign an unlimited guaranty.  The court will nonetheless assume without deciding that the bankruptcy court's finding that the debtor represented to the plaintiff that Lloyd Wood would sign an unlimited guaranty was not clearly erroneous.

[7] Because it appears Lloyd Wood signed his limited guaranty before the plaintiff signed his $2,050,000 guaranty, it would be more accurate to say "did not intend to sign or had not in fact signed."  For the sake of readability, the court will only refer to Lloyd Wood's intent not to sign an unlimited guaranty in the future tense.  In this opinion, when the court uses the phrase "Lloyd Wood did not intend to sign" or the like, it should also be read as including the past tense ("had not in fact signed") unless the context clearly shows that only the future tense was intended.

5

stated that Lloyd Wood would sign an unlimited guaranty because he did not know the statement was false at the time it was made.

Turning to false pretenses, the bankruptcy court found the standard to be that set forth in In re Gilmore, 221 B.R. 864, (Bankr. N.D. Ala. 1998).  In In re Gilmore the court discussed the meaning of false pretenses in § 523(a)(2)(A):

> The concept of "false pretenses" is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses "may be implied from conduct or may consist of concealment or non-disclosure where there is duty to speak, and may consist of any acts, work, symbol or token calculated and intended to deceive." Black's Law Dictionary 602 (6th ed.1990). It is "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." Sterna v. Paneras (In re Paneras), 195 B.R. 395, 406 (Bankr.N.D.Ill.1996). Silence or concealment as to a material fact can constitute false pretenses. Bank of Miami v. Quintana (In re Quintana), 4 B.R. 508, 510 (Bankr.S.D.Fla.1980). In short, false pretenses "can be made in any of the ways in which ideas can be communicated." First Nat. Bank of Webster v. Aetna Cas. & Sur. Co., 256 F.Supp. 266, 272 (D.Mass.1966).

Id. at 872.  The bankruptcy court began its application of this standard as follows:

> The Plaintiff testified that the Debtor represented to him before the Regions bank loan was made that Lloyd Wood would sign an unlimited guaranty. The Debtor testified that it was his understanding before the loan was completed that Lloyd Wood would sign an unlimited guaranty.

(R 11, p. 15)  But, the court found the "relevant inquiry ... for purposes of determining if the Debtor engaged in false pretenses, is the point at which the Debtor discovered or could have discovered that Lloyd Wood signed a limited guaranty."  (R 11, pp. 15-16)(emphasis added).  The bankruptcy court did not find the debtor knew that Lloyd

Wood would not sign an unlimited guaranty prior to the time the loan was completed, but instead found that it was possible that he did:

> By the Debtor's own admission it is possible that he had this relevant information before the completion of the loan.[8]  Further, even if the Debtor did not seek or obtain this knowledge until after the loan, it is this Court's view that in this case he cannot use this as an excuse to escape personal liability.

(R. 11, p. 16).  While the bankruptcy court considered that it was *possible* that the debtor knew about Lloyd Wood's limited guaranty before the loan was completed, it did not find that he did in fact have that knowledge.  Instead, the court rested its holding on the following finding:

> This Court finds that the Plaintiff signed his guaranty with a mistaken understanding of the circumstances surrounding the transaction, and the Debtor <u>should have known</u> about and corrected the mistaken understanding. This Court concludes that the Debtor engaged in false pretenses <u>by not making this discovery and disclosure before the loan was consummated</u>.

(R. 11, p. 16)(emphasis added).  This finding is insufficient to support a finding that the debtor engaged in false pretenses within the meaning of § 523(a)(2)(A).

The language in <u>In re Gillmore</u> quoted by bankruptcy court shows that someone may engage in false pretenses in many different ways.  However, it must be borne in mind that false pretenses is an "<u>intentional fraud or deceit</u> practiced by whatever

---

[8]  It is unclear whether the bankruptcy court considered the loan completed only when the plaintiff signed the second guaranty in the amount of $2,050,000 on August 31, 2000, or on August 15, 2000, when the actual loan to CPS was completed.  For the purposes of this appeal, the court will assume that the bankruptcy court considered the loan completed at the time the plaintiff signed the second guaranty.  Therefore, in this opinion similar references by the court to the loan being completed or consummated should be read as referring to the time when the plaintiff's second guaranty was executed.

method in whatever manner." In re Gilmore, 221 B.R. at 872 (emphasis added).  The

bankruptcy court attempted to find the necessary knowledge and intent in its analysis of

the second and third elements  required under § 523(a)(2)(A).  The bankruptcy court's

discussion of the second element (the representation was knowingly false) is as follows:

> Again, the Debtor was in the best position to find out that the circumstances
> of the loan transaction had changed from what he originally represented to
> the Plaintiff.  He knew the Plaintiff believed that Lloyd Wood was
> providing an unlimited guaranty and thus the Plaintiff had a mistaken
> impression of the circumstances.  Because the Debtor was aware of the
> Plaintiff's knowledge and he failed to undo or correct the false pretenses of
> the transaction with the plaintiff, the third element [9] is satisfied.

(R 11, p. 17) (emphasis added).  Yet again the bankruptcy court did not find the debtor

knew prior to the consummation of the Regions Bank loan that Lloyd Wood would not

sign an unlimited guaranty.  Instead, the bankruptcy court based its finding of a

knowingly false representation upon the debtor's failure to correct the plaintiff's false

belief.  This finding again rests upon the bankruptcy court's belief that the debtor should

have taken steps to discover whether Lloyd Wood intended to or had signed a limited

guaranty.

The bankruptcy court found the plaintiff had proved the third element

required under § 523(a)(2)(A) (an intent to deceive) by "establishing that any withheld or

undiscovered information was done knowingly by the Debtor to ensure the Plaintiff

---

[9]  The bankruptcy court added an additional element (the necessity of a debt or obligation to the
plaintiff) to it's analysis.  (R 11, p. 12).  The bankruptcy court found that element present, and it is not in
dispute in the present appeal.  Therefore, the bankruptcy court's discussion of elements three and four,
correspond to elements two and three in the enumeration of elements in this opinion.

signed an unlimited guaranty." (R 11, p. 18)(emphasis added). In it's discussion of this element, the bankruptcy court made findings of fact as follows:

> This Court finds that if the Debtor truly did not know about Lloyd Wood's limited guaranty, this lack of knowledge was of his own doing and presumably was to ensure the Plaintiff signed an unlimited guaranty.

(R. 11, p. 18). Again, the bankruptcy court did not find the debtor knew about Lloyd Wood's limited guaranty before the loan was consummated.

One theme runs through the bankruptcy court's entire opinion. Each time it was faced with a question as to whether the debtor actually knew before the Regions Bank loan was consummated that Lloyd Wood would not sign an unlimited guaranty, the bankruptcy court refused to find that he had that knowledge. The bankruptcy court's failure to find that the debtor actually knew of Lloyd Wood's intention not to sign an unlimited guaranty before the loan was consummated is so frequent and deliberate that it must be considered to be a finding that this fact had not been proven by the plaintiff. In its findings on the issue of whether the plaintiff's claims were not dischargeable under § 523(a)(6) (concerning debts arising form willful and malicious injury), the bankruptcy court restated it's finding under § 523(a)(2)(A): "This Court has held that the Debtor should have discovered before the Regions Bank loan was completed that Lloyd Wood signed only a limited guaranty, yet he failed to do so." (R. 11, p. 26-27)(emphasis added). This shows that the bankruptcy court actually concluded the debtor did not learn about Lloyd Wood's limited guaranty before the Regions Bank loan was completed.

Had the bankruptcy court found from a preponderance of the evidence that the debtor knew of Lloyd Wood's intention prior to the time the plaintiff signed his guaranty, such finding would have greatly simplified its consideration of whether the debtor had engaged in "false pretenses, false representation, or actual fraud" within the meaning of § 523(a)(2)(A).  If the evidence  supported such a finding, surely the bankruptcy court would have so found.  A review of the trial testimony shows that such a finding would not be supported by the evidence.

The plaintiff testified at trial about the circumstances surrounding the Regions Bank loan and the guaranties signed by the plaintiff, the debtor and Lloyd Wood:

Q:      All right.  At the time the ownership was restructured for CSP and it was going to be the three of you, meaning yourself, Kirk and Lloyd Wood as you have testified, what were the representations by Kirk Wood as to how the guaranty situation would be?

A:      We were going to borrow one point three million dollars.  We were going to pay off the existing debt; go to a new bank with a one point three million dollar loan; have enough money to get cranked up at Clemson; get a letter of credit, secure that, and Kirk was to sign a letter of credit, I was to sign a letter of credit -

Q:      You mean a guaranty?

A:      A guaranty and Lloyd was to sign a guaranty and we were to own the company one-third, one-third, one-third.

Q:      To your knowledge Mr. Wood's guaranty ended up not being unlimited?

A:      Mr. Lloyd Wood.

Q:      Yes.

10

A:     Well, at some pont after that in time and after we put it together, I found out that Lloyd had a limited guaranty and Kirk said that Lloyd would not sign an unlimited guaranty but that he had other arrangements with the bank and he had made arrangements for this loan.  Without him, we wouldn't be getting a loan and that he had some verbal arrangements with the bank in addition to that, however he would not sign anything but a limited guaranty.

So I asked Kirk, "What does this do to the ownership interest in Collegiate Sports Partners?"  He said, "Well, I own a unit three percent - half a unit for three percent; you own a whole unit for six percent; Lloyd is going to increase his ownership to fifteen percent; and then you and I own Woodcom fifty-fifty.  So effectively you own forty-four percent; I own forty-one percent and Lloyd Wood owns fifteen percent under the new arrangement."

Q:     And this was told to you after you had already executed your guaranty in favor of Regions?

A:     Yes, sir, that is right.

* * * *

Q:     Where you surprised?

A:     I was surprised.

Q:     Let me restate the question.  Were you surprised to learn that Mr. Wood's guaranty was limited to three twenty-five?

A:     Yes, Sir.

(Counsel conferring.)

Q:     Mr. Liles indicates I may have been confusing.  Before the Regions Bank loan was made, the one point three, and you guaranteed your debt to Regions Bank, you understood that Lloyd Wood's guaranty was also going to be unlimited; is that your testimony?

MR. J. SCHOEL:     Your honor, again he is leading the witness and I object.

11

MR. SPARKS:          I'm trying to clear things up.

MR. J. SCHOEL:       And I don't want the witness to answer questions that are leading and I would like for him to structure the questions in a non-leading fashion

THE COURT:  Sustained.

(R 14, pp. 33-36).  The question was not rephrased, and the plaintiff never answered.

The above testimony indicates that the plaintiff was surprised to learn that Lloyd Wood's guaranty was limited.  However, the plaintiff never testified at trial that the debtor represented to him Lloyd Wood would sign an unlimited guaranty.  The plaintiff might have so testified had he been allowed to answer the last question.  But he was not. At best the plaintiff's testimony shows that he believed Lloyd Wood would sign an unlimited guaranty.  Additionally, there is nothing in the plaintiff's testimony that would support finding the debtor knew Lloyd Wood intended to sign a limited guaranty before the completion of the Regions Bank loan.

The debtor also testified about his representations to the plaintiff concerning Lloyd Wood's guaranty:

Q:      You never represented to him at all that Lloyd Wood was going to sign an unlimited guaranty just like you two were?

A:      I told him that I did not know what Lloyd's intent was relative to his involvement.  After the agreement was completed with Regional Sports Network, we knew what each person's –

Q:      I'm talking about before when you told him that the company was going to be restructured and the three of you were going to own it. Did you tell him that the three of you were going to own it equally?

12

A:      I do not think that I did that, no.

* * * *

Q:      But you remember conversations after the loan was made and after Mr. Taylor learned that Lloyd Wood hadn't guaranteed his full share; don't you?

A:      I remember what the situation was after that point yes.

* * * *

Q:      When Lloyd Wood's guaranty – when he executed his guaranty and it ended up only being three hundred and twenty-five thousand dollars for the Regions debt, why didn't you tell Ted Taylor about it at the time?

A:      I  don't understand the question.

* * * *

Q:      Mr. Wood, you became aware shortly after or at the time of the making of the Regions loan that Mr. [Lloyd Wood] had only guaranteed three twenty-five, didn't you?

A:      At some point after the final loan was completed, I was aware of that, yes.

Q:      At what point; a day or the same day?

A:      I really don't recall at what specific point.

Q:      Well, tell me what you recall at what point you told my client about it since you now knew about it and were in the information loop as a fiduciary and he didn't.  Tell me.

A:      I assumed that he knew about it.

Q:      How would he have known that?

A:     Well, we signed the documents at Regions Bank at different times. It wasn't a closing that we all sat down and closed those loans and closed those documents.

Q:     So you admit that you didn't tell him about the three twenty-five limitation?

A:     No, I'm sure that I did.  I just admitted that I don't know when I did that.

Q:     In any event you know that you didn't tell him, if you did, until after the loan was concluded because you have already said you didn't tell him before?

A:     I don't recall telling him before.

(R 14, pp. 134-139)

The bankruptcy court believed the last question and answer showed that it was possible the debtor knew before the Regions Bank loan was completed that Lloyd Wood signed a limited guaranty:

The Debtor at first testified that he did not discover until some point after the Regions Bank loan was consummated that Lloyd Wood signed a limited guaranty.  Shortly thereafter, the Debtor indicated that he could not recall whether he told the Plaintiff about the limited guaranty before or after the loan was completed.

(R. 11, p. 14, n. 18).  However, the debtor did not testify that he knew about Lloyd Wood's limited guaranty before the loan was concluded, and more importantly, the bankruptcy court in it's findings of fact refused to find that he did.

It is clear the bankruptcy court believed the plaintiff had not shown by a preponderance of the evidence the debtor knew about Lloyd Wood's limited guaranty prior to the completion of the Regions Bank loan.   A review of the applicable law shows

14

that the plaintiff cannot prevail on his claim under § 523(a)(2)(A) without showing the

debtor knew about Lloyd Wood's limited guaranty before the plaintiff signed his

guaranty.

In Field v. Mans, 116 S. Ct. 437 (1995), the Court was concerned with what

type of reliance was required under § 523(a)(2)(A).  In reaching its conclusion that

justifiable reliance was the standard to be applied, the Court noted that the three operative

terms in that section, "false pretenses, a false representation, or actual fraud," were not

defined in the statute.  Id. at 442.  The Court held their meaning must be determined with

reference to the common law of torts as it stood in 1978.  Id. at 443, n. 9 ("We construe

the terms in § 523(a)(2)(A) to incorporate the general common law of torts, the dominant

consensus of common-law jurisdictions, rather than the law of any particular State.")  The

court turned to the Restatement (Second) of Torts as the most authoritative statement of

the common law:  "Then, as now, the most widely accepted distillation of the common

law of torts was the Restatement (Second) of Torts (1976), published shortly before

Congress passed the Act."  Id. at 443-444 (footnote omitted).  Therefore, any

interpretation of what is meant by "false pretenses, a false representation, or actual fraud"

must begin with an examination of the common law of fraud as it existed before the

Congress passed the Bankruptcy Reform Act of 1978.

The bankruptcy court in the present case found that the debtor engaged in

false pretenses by failing to inform the plaintiff that Lloyd Wood would not sign an

unlimited guaranty.  Section 551 of the Restatement (Second) of Torts sets forth the

conditions under which nondisclosure may give rise to liability based upon fraud.  That

section provides as follows:

> (1) One who fails to disclose to another a fact that he knows may justifiably
> induce the other to act or refrain from acting in a business transaction is
> subject to the same liability to the other as though he had represented the
> nonexistence of the matter that he has failed to disclose, if, but only if, he is
> under a duty to the other to exercise reasonable care to disclose the matter
> in question.

> (2) One party to a business transaction is under a duty to exercise
> reasonable care to disclose to the other before the transaction is
> consummated,

>> (a) matters known to him that the other is entitled to know because
>> of a fiduciary or other similar relation of trust and confidence
>> between them; and

>> (b) matters known to him that he knows to be necessary to prevent
>> his partial or ambiguous statement of the facts from being
>> misleading; and

>> (c) subsequently acquired information that he knows will make
>> untrue or misleading a previous representation that when made was
>> true or believed to be so; and

>> (d) the falsity of a representation not made with the expectation that
>> it would be acted upon, if he subsequently learns that the other is
>> about to act in reliance upon it in a transaction with him; and

>> (e) facts basic to the transaction, if he knows that the other is about
>> to enter into it under a mistake as to them, and that the other, because
>> of the relationship between them, the customs of the trade or other
>> objective circumstances, would reasonably expect a disclosure of
>> those facts.

Restatement (Second) of Torts § 551 (1977).   Therefore, under the common law of fraud

the debtor would be liable only if his conduct as found by the bankruptcy judge fit within

one of the five enumerated instances in which the <u>Restatement</u> imposes a duty to disclose. <u>See</u> <u>Id.</u> cmt. a. ("Unless he is under some one of the duties of disclosure stated in Subsection (2), one party to a business transaction is not liable to the other for harm caused by his failure to disclose to the other facts of which he knows the other is ignorant and which he further knows the other, if he knew of them, would regard as material in determining his course of action in the transaction in question.").

Because the bankruptcy court did not find the debtor knew Lloyd Wood intended to sign a limited guaranty before the Regions Bank loan was consummated, the first two subsections clearly do not apply. Subsection (2)(a) and (b) both start with the phrase "matters known to him." Subsection (2)(d) concerns a knowingly false statement made without the expectation the other would rely upon it. Because the bankruptcy court found the debtor did not know his statement was false when he made it, this subsection does not apply. Subsection (2)(e) concerns situations where one party has made no representation, but is aware of facts basic to the transaction that are unknown by the other party. Because the bankruptcy court did not find the debtor knew about Lloyd Wood's intention to sign a limited guaranty (arguably a fact basic to the transaction) before the loan was consummated, this subsection is inapplicable.

Subsection (2)(c) concerns situations where a representation believed to be true at the time, turns out to have been false. This subsection is the one most relevant to the facts as found by the bankruptcy court, because it held that the debtor believed Lloyd Wood would sign an unlimited guaranty at the time he represented that fact to the

plaintiff.  Had the evidence demonstrated the debtor learned Lloyd Wood did not intend

to sign an unlimited guaranty *before* the Regions Bank loan was consummated, this

subsection might make his failure to disclose that fact fraudulent.  But the subsection

speaks of "subsequently *acquired* information."  It does not impose liability for a *failure*

to acquire the information.  The comment to this subsection makes it clear that there can

be no liability for fraudulent nondisclosure unless the debtor had actually learned that

Lloyd Wood did not intend to sign an unlimited guaranty before the loan was

consummated.

> One who, having made a representation which when made was true or
> believed to be so, remains silent after he has learned that it is untrue and
> that the person to whom it is made is relying upon it in a transaction with
> him, is morally and legally in the same position as if he knew that his
> statement was false when made.

Restatement (Second) Torts, § 551 cmt. h (emphasis added).  Therefore, based upon the

facts as found by the bankruptcy court, the debtor would not be liable under subsection

(2)(c) for fraudulent nondisclosure.

The standards for holding nondisclosure fraudulent under the Restatement

is reflected in the requirement of scienter under § 523(a)(2)(A).

> Scienter distinguishes "actual" or "positive" fraud from "constructive"
> fraud, or that "implied by law"; fraud actionable under § 523(a)(2)(A) is the
> "positive" type.  See, e.g., Ames v. Moir, 138 U.S. 306, 311, 11 S. Ct. 311,
> 34 L. Ed. 951 (1891) ("fraud in the act ⋯ defining [nondischargeability] ⋯
> means positive fraud, or fraud in fact, involving moral turpitude or
> intentional wrong, ⋯ and not implied fraud, or fraud in law, which may
> exist without the imputation of bad faith or immorality" (emphasis added;
> internal quotation marks omitted)).

In re Mercer, 246 F.3d at 391.  In In re Anastas, the court noted that requiring positive

fraud under § 523(a)(2)(A) is supported by the legislative history of Bankruptcy Reform

Act of 1978.  94 F.3d 1280, 1286 (9th Cir. 1996)(citing 124 Cong. Rec. H11089 (Sept. 28,

1978) (statement of Rep. Edwards) reprinted in 1978 U.S.C.C.A.N. 5787, 6436, 6453

("Subparagraph (A) is intended to codify current case law ... which interprets 'fraud' to

mean actual or positive fraud rather than fraud implied in law.").  In Field v. Mans, the

Court implied that scienter is so integral to § 523(a)(2)(A), that  "common sense would

balk" at any rule of statutory construction that would remove it as a requirement.  116 S.

Ct. at 442.

   The importance of scienter in the common law of fraud as it existed in 1978

is also shown in the edition of Prosser's Law of Torts that was available at that time.[10]

See W. Prosser, Law of Torts § 107 (4th ed. 1971).  Prosser finds scienter equivalent to an

intent to deceive.   Id. at § 107, p. 700 ("The intent which becomes important is the intent

to deceive, to mislead, to convey a false impression.").  After considering the various

ways this intent may be found  (speaker believes the statement to be false; the statement is

made without regard to whether it is true or false; speaker knows he does not know

whether the statement is true or false), Prosser states that mere negligence is insufficient:

> Apparently it is at this point that the line is to be drawn between an intent to
> mislead and mere negligence.  An honest belief, however unreasonable, that
> the representation is true and the speaker has information to justify it ... [is]
> no sufficient basis for deceit.

---

[10]  The Supreme Court recognized Prosser as a useful source for determining the common law of
fraud in Field v. Mans.  116 S. Ct. at 444.

19

Id. at p. 701 (emphasis added).  Prosser flatly states that courts holding negligent statements sufficient to support an action for deceit are in the minority.

> A minority of the American courts have ... held that deceit will lie for negligent statements– either declaring outright that the fault is equally great and the reliance of the plaintiff equally justified, or adopting the rather obvious fiction that a duty to learn the facts or not to speak without knowing them is the full equivalent of knowledge.

Id. at p. 705 (emphasis added).  The emphasized text is exactly the fiction engaged in by the bankruptcy court in the present case.  The bankruptcy court found that the debtor's "lack of knowledge was his own doing" and that his failure to discover the information "was done knowingly by the Debtor to ensure the Plaintiff signed an unlimited guaranty." (R. 11, p. 18).  Elsewhere the bankruptcy court found the debtor liable because he "should have known about and corrected the mistaken understanding."  (R. 11, p. 16).  The bankruptcy court is clearly using the language of negligence.  As Prosser recognized, using this language to find intent to deceive  is a fiction.  In this case, the bankruptcy court actually finds § 523(a)(2)(A) applicable because of the debtor's *negligence* in not discovering that his statement was not true, rather than from any actual intent to deceive. The debtor may very well have been guilty of negligence in his dealings with the plaintiff, but § 523(a)(2)(A) only exempts from discharge fraudulent conduct when scienter is present.

<u>CONCLUSION</u>

Because the bankruptcy court did not find the debtor knew of Lloyd Wood's intention not to sign an unlimited guaranty before the Regions Bank loan was

consummated, the debtor's actions do not fall within § 523(a)(2)(A) as that subsection has been interpreted by the courts.  A review of the Restatement (Second) of Torts  and Prosser's Law of Torts shows that the debtor's actions as found by the bankruptcy court would not give rise to liability under the common law of fraud as it existed at the time the Bankruptcy Reform Act of 1978 was enacted.  Therefore, the bankruptcy court's holding that the debtor engaged in false pretenses under § 523(a)(2)(A) will be reversed.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 12 February 2007.


UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.